**In re REA EXPRESS, INC., f/k/a Railway Express Agency, Inc., Bankrupt.**

**Bankruptcy Nos. 79 Civ. 5150, 75 B 253.**

United States District Court,
S. D. New York.

Jan. 11, 1980.

See also, D.C., 442 F.Supp. 71.

Whitman & Ransom, New York City by Donald L. Wallace, Jeffrey A. Oppenheim, New York City, of counsel, Clark, Klein & Beaumont, Detroit, Mich. by Wilhelmina Boersma, Detroit, Mich., of counsel, for appellant.

Frank J. Kelley, Atty. Gen., Lansing, Mich. by Arthur E. D'Hondt, Don. L. Keskey, Asst. Attys. Gen., Lansing, Mich., of counsel, for appellee.

## MEMORANDUM DECISION

WERKER, District Judge.

This is an appeal from Bankruptcy Judge John Galgay's decision denying the petition of the trustee in bankruptcy for an order directing the Michigan Department of Commerce, Michigan Public Service Commission ("MPSC") to reinstate a certificate of public convenience and necessity held by the bankrupt REA Express, Inc. ("REA") authorizing it to operate as a common motor carrier within the State of Michigan.

On November 6, 1975, REA was adjudicated a bankrupt and thereafter C. Orvis Sowerwine was duly qualified as trustee. Pursuant to section 2a(15) of the Bankruptcy Act, 11 U.S.C. § 11(a)(15), Judge Galgay issued two orders restraining the actions of creditors which would interfere with the property of the bankrupt estate. At that time, REA held two types of operating certificates of authority: commercial zone authority (R–441) and common carrier authority (C–19). Section 10 of Article 5 of the Michigan Motor Carrier Act provides that operating authority must be renewed yearly by the filing of an application and a payment of a fee between November 1 and December 1. Late application is permitted until December 31 upon the payment of a penalty of an additional ten dollars. Section 10 further provides that in the event a certificate holder fails to apply for renewal by December 1, he is to be advised by the MPSC of his delinquency and given an opportunity to file by December 31. In the event an applicant for renewal fails to comply with the rules and regulations governing a renewal application, other than with respect to the payment of fees, the MPSC is required to give the applicant notice of the failure and notice of a 10-day period in which to correct the deficiency.

REA failed to file by December 1, 1975 as required to maintain both certificates for 1976. On December 9, 1975, the MPSC sent a letter to REA at its Chicago address informing REA of its delinquency and enclosing separate renewal applications for the C–10 and R–441 authorities. Thereafter, REA effectively renewed both certificates for 1976. In its renewal applications, REA did not indicate that it was no longer using its Chicago address, although its correspondence to the MPSC originated from its attorneys' offices in New York.

In 1976, REA again failed to file by December 1, as required to renew for 1977. The MPSC again sent renewal forms and delinquency notices. However, while the R–441 notice and form were sent to the trustee in New York, the C–19 form and notice were sent to REA's Chicago address, which had not been used by REA for approximately a year. REA submitted an

executed application for R–441 authority and paid the requisite fees, but it did not file an application or make payments with respect to C–19 authority.

As the result of an exchange of correspondence with the MPSC in August and September of 1977, counsel for the trustee was advised that REA's C–19 authority had expired for failure to renew and that under section 10 the MPSC was powerless to preserve that certificate.

On February 2, 1979, REA's Michigan operating authorities were sold to Central Transport, Inc. for $1,000 in an auction before the Bankruptcy Court. The purchaser was fully aware of the status of REA's operating authorities.

The trustee petitioned the Bankruptcy Court in March 1979 for an order directing the MPSC to reinstate the C–19 authority. Judge Galgay denied the petition in an opinion dated August 7, 1979, and the trustee subsequently filed this appeal.

■ It would appear that this dispute has been rendered moot by virtue of the fact REA sold its Michigan operating authorities to a third party. In his opinion, Judge Galgay noted that the authorities had been sold, and found that "no injury to the estate [existed] which might require the exercise of any equitable power . . . ." *In re REA Express, Inc.,* No. 75 B 253, slip op. at 7. Indeed, it would appear that whether or not the requested relief is granted, the bankrupt estate would remain unaffected, for the sale price reflected the possibility that the C–19 authority was invalid. The trustee has failed, both in his briefs and at oral argument, to show that this dispute is not moot. Hence, the appeal must be dismissed.

■ Even if it is assumed that this appeal is not moot, it is clear the Bankruptcy Judge's decision should be affirmed. The trustee argues that the Michigan statute does not provide for revocation of a carrier's certificate for failure to file a renewal application. The trustee is mistaken, for section 10 provides:

All certificates or permits granted hereunder *shall be made to terminate* as of December 31 of the calendar year during which such certificate or permit may be issued. All common motor carriers . . . shall make application for the renewal of their certificates or permits not before November 1 and not later than December 1 of the year in which their current certificate or permit *expires.* Certificate and permit holders not making application by December 1 shall be advised by the [MPSC] and given the opportunity to file their applications on or before December 31 on payment of a penalty of $10.00. . . . (Emphasis added).

This language certainly contemplates the automatic expiration or termination of a certificate upon the failure of a holder to file a renewal application by December 31, after notification by the MPSC of the failure to file by December 1. As Judge Galgay held below, REA's failure to take the affirmative step to renew as mandated by state law "triggered" "the operation of a self executing statute." *In re REA Express, Inc.,* No. 75 B 253, slip op. at 5 (Aug. 7, 1979).

The trustee points to the provision in section 10 which provides for notice of and a 10-day period in which to correct failures to comply with MPSC rules and regulations governing "the *filing* of an application for renewal." Appellant's Mem. of Law, at 7 (emphasis added). This reliance is misplaced, however, for this portion of section 10 is clearly applicable to a defective filing and *not* to a failure to file.

■ The trustee raises due process and estoppel arguments, contending (1) that his execution and filing of the R–441 application should under the circumstances suffice to cover the C–19 authority, and (2) the mailing of the C–19 form and delinquency notice to the Chicago office without requesting a return receipt or without registration was insufficient service. Judge Galgay properly rejected these arguments, however, for REA, having gone through the process in 1975, had actual notice that two separate applications were necessary, and

the R–441 application which was received was clearly designated as an R–441 form. Moreover, REA did not at any time notify the MPSC of its address change, and the MPSC had in fact successfully used the Chicago address in December 1975 to contact REA.

█ The trustee also maintains that the MPSC violated the Bankruptcy Court's 1975 restraining orders by its "cancellation" of REA's C–19 authority. These restraining orders were issued by Judge Galgay pursuant to section 2a(15) of the Bankruptcy Act, which enjoined all persons from "affecting . . . or in any way interfering with any property, assets, rights . . . of the said bankrupt . . . ." This argument, however, is misplaced, for this case does not involve actions of a person or entity affecting or interfering with a bankrupt's estate. Instead, the trustee failed to fulfill his obligation to "manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated . . . ," 28 U.S.C. § 959(b), to the extent that state law does not conflict with the bankruptcy law.[1] The state law here in issue does not conflict with the Bankruptcy Act; the Michigan statute does not prohibit a bankrupt from renewing its operating certificate merely because of its insolvency. Indeed, there is nothing in the records to indicate that REA's C–19 authority would not have been renewed had the application been timely and properly filed.

In accordance with the above, the Bankruptcy Court's decision is affirmed.

SO ORDERED.

---

1. It is assumed for purposes of this decision that a certificate of operating authority is "property" within the meaning of the Bankruptcy Act. *Compare Gillis v. California*, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199 (1934); *In re Dolly Madison Indus., Inc.*, 504 F.2d 499 (3d Cir. 1974); *In re Zeitzer Food Corp.*, 9 C.B.C. 614 (E.D.N.Y.1976).